Good morning. May it please the Court, Jonathan Libby appearing on behalf of Alan Richard Don Beeman. Your Honor, in this case, Mr. Beeman has argued that his sentence is unreasonable and he raises several challenges to special conditions of supervised release. Unless the Court has specific questions on the reasonableness argument, I'd like to focus on supervised release conditions this morning. With respect to the supervised release conditions as discussed in the last case, the standard for imposition of these conditions is very clear. The conditions must both be reasonably related to various factors under 3553A, and they can involve no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervision. So the least restrictive conditions necessary to Restriction, recidivism, protection of the public, et cetera. Correct. Here I'd like to the first condition I'd like to address is the substance abuse treatment and counseling condition, which were conditions four and five. What's somewhat peculiar about this condition is the government, in fact, below, also agreed with defense counsel that the condition was not appropriate. Now, we know from Weber that the government bears the burden of proving the necessity of any supervised release condition, and that it they must, in fact, establish that it involves no greater deprivation of liberty than is reasonably necessary. Here, the government actually agreed that below that the condition was unnecessary because Mr. Beeman has been sober for 17 years, and they agreed that should he, in fact, he's going to undergo drug testing, and should he, in fact, test dirty on one of those tests, probation can always then seek a modification with the court asking for treatment. He was an alcoholic, and alcoholism doesn't go away. You just control it. That's correct. And you could get off. I assume, but did the district judge indicate his reasons for wanting this type of control? He did not. The only explanation given in the record is what the probation officer recommended, which was that it's to address his prior alcohol use. So there's no reasoning that we have to indicate whether it's reasonable. I mean, clearly, if a person's an alcoholic, it's nice to keep them off. And when you go into alcoholism and drug, it can open the door to the prior problems. I can see it. But if that's not discussed ---- Well, exactly. And I can certainly concede it is, given his past history, it's reasonably related. I mean, a drug treatment condition would be reasonably related to his history. The question then is, is imposing drug treatment a greater deprivation of liberty than is necessary under the facts? And here, as the government conceded below, it wasn't necessary. Well, we'll see if they'll confess error, and then we'll know what to do with it. Well, in a brief, they said they'll, you know, they're backing up the court now, though they do concede that they had agreed that it wasn't necessary below. Why would we say it's an abuse of discretion if the district court found, based on the probation officer's recommendation, that this sort of treatment and counseling program was reasonably related and involved no greater deprivation of liberty than is reasonably necessary for deterrence, protect the public and any necessary rehabilitation? Why is that? I can see an argument there certainly wouldn't be an abuse of discretion not to impose it, but why is it an abuse of discretion to impose it? Well, part of the problem, I suppose, is the government still had the burden of establishing something which they didn't establish. Since they conceded, it wasn't necessary. So they didn't meet their burden. And if they don't meet their burden, then the Court's not supposed to impose a condition under Weber. So that would be my first argument. Also, I don't think the Court considered some factors that the probation did not bring to their attention, one of which is under the sentencing guidelines. The guidelines indicate that a drug treatment condition would be appropriate, quote, if the Court has reason to believe that defendant is an abuser of narcotics, other controlled substances or alcohol. That suggests that there needs to be a present problem, not a problem well in the past. And I would also point, Your Honors, to United States v. Napier. I don't believe it's cited in the briefs, which is 463 Fed 3rd at 1044 to 1045, in which this Court said that long ago alcohol or drug abuse would not be sufficient to justify a drug treatment condition. And that's what we have here. Counsel, I have a question or two on this. I'll take another look at the treatment issue based on your argument. But that one hadn't been of concern to me. However, I thought there was a question on the condition about sexually explicit conduct and whether that was clear enough that that could be imposed since some such conduct is not illegal. And I also wondered about the restraints concerning his being near children, if they gave enough guidance. Maybe you could address some of the other conditions in addition to the alcohol one. Certainly. With respect to the condition that prohibits Mr. Beaman from possessing materials that depict or describe sexually explicit conduct, the condition is terribly overbroad. It's completely inconsistent with the First Amendment. I would note in Riordan a similar condition was upheld. However, in Riordan it was on plain error review. Riordan what? It was on plain error review. A similar condition to this had been upheld in Riordan on plain error review. But didn't Riordan reject the claim that the phrase sexually explicit conduct was unconstitutionally vague and overbroad? We're not suggesting that the term sexually explicit conduct as defined in the statute is vague. We're suggesting we know exactly what the statute says, and the statute as applied in this condition is overbroad as a condition. Whether the statute's overbroad is a political question, whether it includes whether all of that should be included in the statute, that's not the issue. The issue here is the statute says it includes simulated sexual conduct involving adults, and that can be broadly interpreted to mean afternoon soap operas, anywhere where there's a simulated sex scene. PG-rated movies, television programs, all of this is covered under this condition. The government doesn't dispute that, by the way. And then didn't we uphold that in Antelope or indicate that that language passed constitutional muster? I mean, we seem to have indicated in our prior cases that that type of condition was at least constitutional. With respect to that, I don't recall Antelope discussing this condition. The Court may be correct. Antelope has certainly discussed computer restrictions. In Riordan, we referred to Bee, which was one of our prior cases. And whether ñ regardless of what the standard review is, it seems to me that in Riordan they were actually talking about the specific problem of whether free speech can be abridged this way. I don't get ñ I find difficulty distinguishing the case. I'm familiar with Riordan. I sat on it. But I'm having some difficulty distinguishing Riordan on the basis of plain air review or whatever. Sure. Well, first of all, Bee, the condition was that ñ the condition only applied to sexually stimulating or sexually oriented material. This condition applies to much more than that because it applies to, again, completely non-sexual things. Sexual things. Such as, you know, textbooks, movies, stuff that's, you know ñ I mean, it certainly covers adult pornography, but includes non-sexual matters as well because of the simulated aspect that's under the statute. So it's a broader condition than in Bee. Also, the facts here are very different, obviously, than in Riordan. The Court said it couldn't find plain error because in Riordan you're dealing with someone who has a stated interest in children, has composed various stories involving rape and murder of children, pretty vile stuff. There's certainly no indication of that here, which would suggest that unlike in Riordan, which was, again, on plain error, here where we objected to it, this just encompasses much too much. It's a greater deprivation of liberty. And I don't believe the Court really paid that close attention to the first significant liberty interest concerns here and the First Amendment violations here. I would note the Third Circuit addressed this identical condition just a few months back and struck the condition, said it's neither reasonably related and it is a greater deprivation of liberty because serious First Amendment concerns exist when banning explicit materials relating to adults, since none obscene sexually explicit material involving persons over 17 are protected by the Constitution without regard to social worth. And he said, you know, when you're just dealing with a simple child pornography possession case, to all of a sudden say you can't possess any of these materials, some of which are not sexually stimulating, it goes much too far. This condition also includes that he can't possess materials that describe certain misconduct. In the Cope case, which addressed a similar issue with respect to the child pornography statute, said, you know, it includes things like the statute itself, the pre-sentence report, because it describes various conduct, and by just its language, the defendant wouldn't be permitted to possess those things. So that's why this case is different from yours. And some facts in this case, it's just simply not appropriate here. Would the condition preclude just a typical PG movie that someone gets from Netflix that has a love scene in it that shows people engaging in a simulated sex act? I believe it does. And, in fact, I mean, the Supreme Court in the Free Speech Coalition case, when it struck down the ban on virtual child pornography and the Child Pornography Protection Act, said that virtual and simulated sex acts would prevent, would put various Oscar award-winning movies like Traffic and American Beauty, because they include simulated sex acts. That's covered under the definition of simulated sex. So, yes, it would certainly cover PG-rated movies. And that's really why we have a very big problem here. I would also note the last case on the calendar today, the Stottero case, the court in that case actually declined to impose this condition, saying this would prevent someone from watching Prince perform at the Super Bowl. And so he thought it went, the judge in that case thought it went too far. And it does. And, Your Honor, do you want me to address the associational restrictions? I see my time is up. Yeah. If Judge Aikuda doesn't mind, he'd give you one minute on that. I'd appreciate hearing something on those restrictions. Okay. With respect to the residential and associational restrictions, again, Reardon upheld them on plain error because, again, he expressed a significant sexual interest in children. And because of the nature of the case involving interest in rape and murder and the various other charges in the case and his association with known pedophiles, there obviously was a concern that he, he needs to be kept away from children. Here, they're simply not the same facts. We have someone who is not a pedophile. He certainly possessed child pornography. But there's no indication that he has an active interest in having sex with children. There are numerous letters from family and friends in the record which describe how they certainly have no problem with him continuing to have contact with their small children because he's very good with them. And so on this record, there's simply no basis for restricting Mr. Gaiman from being in certain areas. He's just not a danger to the community. And unless the Court has further questions. Thank you. Thank you. Good morning. May it please the Court. My name is Ivy Wang. I represent the United States in this matter. Like defense counsel, unless the Court has specific questions, I'd like to submit on the brief with respect to the reasonableness issue in this case. I'd like to do the same with the search issue in this case as well. Moving on to the supervised release conditions in this case, I'd like to first touch on the facts, which I believe most of the challenge supervised release conditions do turn on. And the facts of this case is that the defendant was found with over 1,500 images of child pornography. And that number is more than twice the number for the maximum sentencing enhancement for number of images. In addition to those images, which were found on his computer, they also found 50 CDs in his residence containing child pornography. He also admitted that he had printed off thousands of pages of child pornography before he began downloading onto CDs. He also admitted to law enforcement that the images of child pornography sexually aroused him, and that he used those images to masturbate. So here is a defendant who has a demonstrated interest in, a demonstrated sexual interest in children, whether he has acted, whether he has been caught acting on that interest or not. He has a demonstrated sexual interest in children. And I believe that that was what the district court was trying to address when he imposed the supervised release conditions in this case. Let's focus. I'd like you to focus for at least a moment on Condition 12, which, as I understand it, prohibits, you know, having sexually materials that would show sexually explicit conduct. So could you just explain the government's view of the scope of that? For example, you know, would it cover typical love scenes that you see in PG movies? Your Honor, I don't believe that. So if he has a DVD at home that he got at Blockbuster or Netflix, and it has a love scene in it with adults that's sexually explicit, is he violating the condition of his supervised release? Your Honor, I don't think it's in the record as to what exactly is in a PG movie. But my belief is that a PG movie would not be so sexually explicit as to fall within the statutory definition. Well, there are certainly PG movies, I think. Well, actually, I'm not an expert on that. But I just assume that there are some that would show people in, you know, fake sex acts. They're not really having sex, the actors. But they make it look like it. Your Honor, I believe that the 18 U.S.C. section 2256-2 is fairly specific as to what it believes the sexually explicit conduct to cover. And with permission of the court, I can get my notes. Thank you. 2256-2 talks about sexual intercourse, and it's very, very specific, talking about genital, genital, oral, genital, sexual intercourse. oral, anal, bestiality, masturbation, sadistic or masochistic abuse, lascivious exhibition of the genitals or pubic area of the person. I don't believe that sort of definition would necessarily cover something in a PG movie. I understand in a PG movie there may be some kissing and some conduct showing intimacy. But to me, the definition in 18 U.S.C. 2256-2 is extremely specific and really focuses on fairly extreme and graphic sexual conduct. I also believe that this Court is bound by its decision in United States v. Rearden, which looked at that very condition, banning sexually explicit conduct in the materials that defendant possessed. And it found that the phrase sexually explicit conduct is neither vague nor overly broad. The Rearden court, in reaching this decision, cited a number of previous Ninth Circuit cases. For example, United States v. Excitement video, holding that definition of sexually explicit conduct set forth in the prior version of 18 U.S.C., Section 2256-2, Survived Vagueness and Overbreath Challenges. It also cited United States v. Adams, where sexually explicit conduct in 18 U.S.C. Section 2256-2 is neither constitutionally overbroad nor vague. So it appears that this Court has looked at this phrase as defined in this statute a number of times and has concluded that it is not vague or overbroad as applied in a supervised release condition. How about the restrictions on his ability to live or frequent places where children hang out? Yes, Your Honor. With respect to the conditions which cover loitering and residency, Your Honor, this Court in United States v. Bea has already upheld the same condition as a proper exercise of the district court's broad discretion setting terms and conditions of supervised release. Again, in United States v. Rearden, this Court upheld the same condition. And I don't think, you know, Rearden is really distinguishable here. As I stated before, the defendant here has openly expressed a sexual interest in children. And this condition is therefore reasonably related to the purpose of protecting the public and also helping rehabilitate him and making sure that he doesn't reoffend. This defendant clearly, with his collection of more than 1,500 images, his 50 CDs containing images, his admissions regarding his sexual arousal by the images, it shows an obsession with the sexuality of children. And I believe that this condition, as well as a residency condition, is necessary to promote his rehabilitation and to protect the public. I actually recently came across a, it's a memorandum disposition. It's unpublished, but it was published, it was unpublished, but it was filed last year, 2007, after January 2007. And that case is United States v. Yoder. And there the panel found that it was non-abusive discretion, that this condition was non-abusive discretion because it involved no greater deprivation of liberty than necessary to promote the defendant's rehabilitation and protect the public. And that's exactly what I think, you know, is applicable here, that it's necessary to promote the defendant's rehabilitation and to protect the public. You know, there's another case, and I apologize in advance if I pronounce the name wrong. It's United States v. Guagliardo. It's a Ninth Circuit case, 278 F. 3rd, 858. And there, while it held that the term close proximity was vague in a residency restriction, it did say the residency restriction would be okay with a precise distance limitation. With the loitering restriction, there is a precise distance limitation, and that's 100 feet. With the residency restriction, it is a direct view, not a specific distance limitation, but if anything, direct view I think is even more narrow than a precise distance because you can be within a particular radius of a park, of a school park, but not actually be in direct view of the park. And so, if anything, we believe that this condition is even more specific and more narrow than what the Ninth Circuit said was okay under Guagliardo. Okay, I have a further question on your Condition 12. Okay. Now, I'm pretty sure I haven't seen this magazine since the 1960s as a college student, but like Playboy magazine, could Beeman have that? Could he have Playboy magazine, or is that sexually explicit conduct being depicted? My recollection was it was pretty explicit. Your Honor, I do believe that Playboy magazine probably would fall under sexually explicit conduct. I think that this condition does cover adult pornography, if that is what the Court is wondering. And in the addendum to the- I think Playboy probably has some stuff that wasn't considered pornography under the standards then, but still, it was sexually explicit. So he can't have that. So in the record, does the record before the district court support that it's reasonably necessary to restrict him as to adult sexual conduct as opposed to something with children? Your Honor, at the sentencing hearing, the Court stated that it would not modify any of the proposed terms of supervised release because it believed that, as explained in the addendum by the probation officer, there was a reason – sorry, a rational basis for each of the proposed conditions. So turning to the addendum by the probation officer, the probation officer had stated that was reasonably related to the nature and circumstances of the offense, in that it is well recognized that adult pornography can be a gateway to child pornography for those in the defendant's situation. As such, the condition facilitates the defendant's treatment and reduces the risk of reoffending. I don't think I'd have a problem with a restriction on adult pornography, but I was reading sexually explicit conduct to go beyond that. So if it doesn't cover PG movies, would it cover – what's the next thing up, R-rated movies? R-rated movies. Your Honor, I – Presumably, I assume it does. Your Honor, without the – I think the standards for the different movie ratings from the Motion Pictures Association, I think it's a little difficult for me to answer. But I think that – I think it's clear from the previous cases and from the statute that the condition is certainly intended and primarily focuses on graphic, you know, graphic, sexually explicit images. It focuses on adult pornography, and it focuses on these things for the purpose of preventing the defendant from reoffending, preventing what probation has called a gateway to child pornography from triggering some sort of recidivism by the defendant. Thank you very much. Thank you. This case is submitted.
judges: Wallace, Gould, Ikuta